UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 09-21426-CIV-MORENO

SHOPPING CENTER MANAGEMENT, *et al.*,

    Plaintiffs,

vs.

ARCH SPECIALTY INSURANCE COMPANY,
*et al.*,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The parties in this suit disagree over the interpretation of a commercial general liability policy. Plaintiffs, the insured, collectively referred to as Turnberry[1], filed suit seeking declaratory relief against Defendant Arch Specialty Insurance Company ("Arch"). The parties seek a declaration of rights concerning the amount of the self-insured retention ("SIR") applicable to certain underlying personal injury claims. The SIR acts as a threshold whereby Arch is only responsible for the amount of liability in excess of the SIR cap. Here, Arch claims that Turnberry did not comply with certain requirements in the policy, and as a result, the SIR is raised from $50,000 to $1,000,000. Turnberry, however, claims that the Florida Claims Administration Statute Section 627.426(2) ("CAS") applies to Arch, and because Arch failed to comply with the CAS notice requirements, Arch's defense to

---

[1]The following is a complete list of all Plaintiffs: Monroeville Mall Partners, LP, a partnership operating under the name of Turnberry Associates, Monroeville Mall Incorporated, Monroeville Mall Expansion Company, LP, Shopping Center Management d/b/a Turnberry Associates, and Monroeville Mall, LLC all with offices located at the same address as Turnberry Associates's principle place of business. Turnberry Associates is the named insured under Arch's Commercial General Liability Policy.

coverage is therefore, waived. For the reasons stated below, the Court finds that Arch failed to comply with the requirements of the CAS, and so, Arch's defense to coverage is barred. The Court therefore GRANTS summary judgment in favor of Plaintiffs.

## BACKGROUND

The underlying personal injury accident that gave rise to this dispute, occurred on April 19, 2004 at the Monreoville Mall in Monroeville, Pennsylvania. Turnberry, who owns and operates Monroeville Mall, hired Wood Electric Construction Company ("Wood Electric") to perform certain electrical work in connection with construction. Two employees of Wood Electric, Gerald Nicholls and James Frances Sherry, Jr., were performing electrical work, which caused an electric fault. The electric fault resulted in two successive electrical explosions that injured Mr. Nicholls and Mr. Sherry, Jr. Mr. Sherry, Jr. ultimately died of his injuries on May 26, 2004.

Subsequently, Mr. Nicholls and Joyce Nicholls, his wife, along with Jeannette Sherry, the Administratrix of the Estate of Mr. Sherry, Jr., filed suit against Turnberry. Thereafter, in an attempt to seek coverage from Arch, a disagreement ensued between Turnberry and Arch over the applicable SIR under the Special Conditions for Subcontractors Endorsement ("Subcontractor's Endorsement") for the Nicholls and Sherry claims. Turnberry contends that the applicable SIR is $50,000 whereas Arch argues that the applicable SIR is $1,000,000. On March 6, 2009, Turnberry and Arch entered into a stipulation whereby Arch agreed to contribute $1,000,000 to the settlement of the Nicholls and Sherry claims. In that stipulation, the parties agreed to litigate their respective rights and obligations under the policy in a declaratory judgment action. (Arch's Mot. Summ. J. Ex. D.) The provision at issue is Endorsement 12 titled, "Special Conditions for Subcontractors." It states:

> The Conditions of this policy are amended to include the following:
>
> 1. Certificates of Insurance for Commercial General Liability coverage, with limits at least equal to or greater than those limits provided by this policy will be obtained by the Named Insured from all "subcontractors" prior to commencement of any work performed for any insured.
>
> 2. The Named Insured will obtain hold harmless agreements from all "subcontractors" indemnifying against all losses and all costs for the work performed for any insured by the subcontractor(s).
>
> 3. The Named Insured will be named as additional insured on all "subcontractors" Commercial General Liability policy(s).
>
> 4. For items 1. through 3. above, documentation will be retained for a minimum of eight years from the expiration date of this policy.
>
> In the event of failure to comply with this condition, the Self-Insured Retention will be increased to $1,000,000 per occurrence for any loss or expense caused in whole or in part by any act or failure to act by any "subcontractor". The Self-Insured Retention will also be increased to $1,000,000 per occurrence for any Bodily Injury, Property Damage, Personal Injury, and Advertising Injury, any suit brought against you, any costs or expenses of such investigation and defense for liability, claims, damage or loss or expense to any "subcontractor" or "subcontractor's" employee, regardless of circumstances.
>
> For the purposes of this endorsement only, "subcontractor" or "subcontractors" means any person or entity who is not an employee of the insured and does work or perform services for or on behalf of the insured.
>
> All other terms and conditions of this policy remain unchanged.

(Arch's Mot. Summ. J. 4.)

Turnberry seeks declaratory relief on three Counts. Count I makes several allegations. First, that the CAS applies to surplus-lines insurance and that Arch asserted a coverage defense, thereby triggering compliance with the statute's notice requirements. Second, that Arch failed to comply with the CAS and therefore waived its coverage defense. As an alternative argument, Count II claims that Turnberry's requirement to comply with the Subcontractor's Endorsement is thwarted by

Pennsylvania's worker's compensation laws. Turnberry claims that the Subcontractor's Endorsement's requirements would be meaningless and void under Pennsylvania's worker's compensation laws, and therefore, any alleged violation of the Subcontractor's Endorsement is harmless. If Count II fails, Turnberry alleges Count III, arguing that Turnberry substantially complied with the Subcontractor's Endorsement, and therefore, deserves coverage.

Arch asks for the Court to declare its rights under the policy as follows: (1) that the SIR applicable to the underlying personal injury claims is $1,000,000; (2) that Turnberry is obligated to indemnify Arch in the amount of $1,000,000 representing the amount advanced by Arch to partially fund the settlement of the Nicholls and Sherry litigation; and (3) that Arch is entitled to recover pre-judgment interests and costs.

Before the Court are the parties cross motions for summary judgment on all three Counts.

## ANALYSIS

The first issue for the Court is whether the CAS applies to Arch, which turns on two elements. First, whether the CAS applies to surplus-lines insurance, the type of insurance provided by Arch. And second, whether Arch is asserting a coverage defense that triggers compliance with the notice requirements of the CAS. The next threshold issue is whether Arch's asserted defense to providing coverage is a "coverage defense" as defined by the CAS. And finally, the last issue is whether Arch complied with the requirements of the CAS. For the reasons stated below, the Court finds that the CAS does apply to Arch as a surplus-lines insurer, that Arch asserted a coverage defense, and that Arch's coverage defense is barred for failure to comply with the CAS.

The CAS, Florida Statute Section 627.426(2), limits an insurer's ability to deny coverage based on a coverage defense. If a coverage defense is asserted, but the notice deadlines are not

followed, then the CAS bars the insurer's ability to deny coverage based on a coverage defense. The Florida Supreme Court defined a "coverage defense" under the CAS as a "defense to coverage that otherwise exists." *AIU Ins. Co., v. Block Marina Inv., Inc.*, 544 So. 2d 998, 1000 (Fla. 1989).

### *(1) Whether the CAS, Fla. Stat. § 627.426(2), applies to surplus-lines of insurance*

Surplus-lines insurance is an alternative type of insurance that is offered by unauthorized insurers for consumers to be able to purchase property-liability insurance that is otherwise not offered in the open market by authorized insurers. § 626.915, Fla. Stat. Turnberry's main support for the proposition that the CAS applies to surplus-lines of insurance is found in the Florida Supreme Court case *Essex Ins. Co., v. Zota*, 985 So. 2d 1036 (Fla. 2008). In *Essex*, the insurer argued that chapter 627 of the Florida Statutes, which includes the CAS provision, did not apply in its entirety in any way to surplus-lines insurance because of the exclusionary provision found in section 627.021(2). *See id.* at 1041. After a full-statutory analysis, however, the court held that the exclusion did not apply to all of chapter 627, but rather, the "correct interpretation is that the exclusionary provisions of section 627.021(2) *apply only* to the ratings laws found in *part I* of chapter 627." *Id.* at 1044 (emphasis added). Thus, whether section 627.426(2), the CAS provision at issue here, applies to surplus-lines of insurance, depends on whether the CAS is in part I of chapter 627. Because the CAS, Section 627.426, is found in part II and not part I, the exclusion does not apply. *See Sharp Gen. Contractors, Inc., v. Mt. Hawley Ins. Co.*, 604 F. Supp. 2d 1360, 1362 (S.D. Fla. 2009) (finding that the CAS does apply to surplus-lines insurance because it is found in part II and not part I of chapter 627). Consequently, the CAS does apply to surplus-lines insurance, and therefore, Arch is subject to the CAS.

Arch, nevertheless, maintains that recent legislative activity should bar application of the

CAS to surplus-lines insurance. On June 11, 2009, the Florida Legislature passed a house bill specifically stating that the provisions of chapter 627 do not apply to surplus-lines insurance. § 626.913(4), Fla. Stat. (2009). It also passed Florida Statute Section 626.9374(7) which states that "amendments to s. 626.913 . . . . are remedial in nature and operate retroactively to the regulation of surplus lines insurers from October 1, 1988 *except with respect to lawsuits that are filed on or before May 15, 2009.*" § 626.9374(7), Fla. Stat. (2009) (emphasis added). There is no doubt that Florida Statute Section 626.913 establishes that the CAS, does not apply to surplus-lines insurance. The question then, is whether this new law abrogating the CAS's application to surplus-lines insurance, applies to this case. The plain reading of Florida Statute Section 626.9374(7) explicitly excludes lawsuits that are filed before May 15, 2009 from retroactive application. Hence, because this lawsuit was filed in April 2009, the new law's retroactive application does not reach this case. Therefore, the CAS does apply to surplus-lines insurance.

### *(2) Whether Arch's defense in denying coverage is a "coverage defense" thereby triggering compliance with the CAS, Fla. Stat. §627.426(2)*

Having found that the CAS does apply to Arch, the Court must determine whether Arch's reason for denying liability is a "coverage defense" that triggers compliance with the CAS. As mentioned above, the Florida Supreme Court defined a "coverage defense" under the CAS as a "defense to coverage that otherwise exists." *AIU Ins. Co.*, 544 So. 2d at 1000. An insurer is not alleging a "coverage defense" when it claims the "endorsement has expired or where the coverage sought is expressly excluded or otherwise unavailable under the policy or under existing law." *Id.* Rather, the CAS in "effect works an estoppel" and "while the doctrine of estoppel may be used to prevent forfeiture of insurance coverage, the doctrine may not be used to create or extend coverage." *Id.* (citation omitted). Indeed, "[f]or purposes of application of the doctrines of estoppel and waiver,

Florida law draws a distinction between provisions of forfeiture and provisions of coverage. Thus, 'while an insurer may be estopped by its conduct from seeking a [f]orfeiture of a policy, the insurer's [c]overage or restrictions on the [c]overage cannot be extended by the doctrine of waiver and estoppel.'" *Lloyd's Underwriters at London v. Keystone Equip. Fin. Corp.*, Nos. 4D08-2520, 4D09-111, 2009 WL 4927917 (Fla. 4th DCA Dec. 23, 2009) (citations omitted).

In other words, as an estoppel mechanism, the CAS may prevent the insurer from asserting a coverage defense for failure to comply with its requirements. A coverage defense, therefore, is a defense that is based on insurance coverage to have "been lost or nullified as a consequence of the actions of the insured." *See Lloyd's Underwriters at London*, 2009 WL 4927917 (citing *Peters v. Great Am. Ins. Co. N.Y.*, 177 F.2d 773, 779 (4th Cir. 1949)); *see also AIU Ins.*, 544 So. 2d at 1000 (defining a coverage defense as a defense to coverage "which otherwise exists based on a breach of a condition of the policy").

Here, Arch seeks to deny coverage for the underlying personal injury claims based on Turnberry's failure to comply with the Subcontractor's Endorsement. The Subcontractor's Endorsement requires Turnberry to obtain hold harmless agreements from its subcontractors and for Turnberry to be named as an additional insured on all its subcontractors' policies. If Turnberry does not comply with these conditions, then the Self-Insured Retention ("SIR") will be increased to $1,000,000. If the conditions are complied with, however, then the SIR remains at $50,000. Thus, regardless of whether or not Turnberry complies with the conditions, Arch still agreed to provide coverage, albeit to a lesser degree.

Arch maintains that it is not required to provide any coverage for the amount included within the SIR, and thus, the SIR does not eliminate otherwise existing coverage. Arch points to the SIR,

which states that Arch will pay for sums in excess of the SIR, and any amount below the SIR limit, is the responsibility of the insured. (Arch's Mot. Summ. J. Ex. A.) Yet, the terms of the policy dictate that even if Arch fails to comply with the Subcontractor's Endorsement, Turnberry will still have coverage. The effect of not complying with the Subcontractor's Endorsement does not produce a lack of coverage, but instead, produces less coverage; Turnberry's non-compliance would mean the SIR threshold is raised to $1,000,000. In short, Arch's claim to raise the SIR to $1,000,000 from $50,000 is a coverage defense, because it is a defense to coverage that otherwise exists. Thus, the Court finds that Arch's assertion, that the SIR is $1,000,000 and not $50,000 because Turnberry failed to comply with the Subcontractor's Endorsement, is a coverage defense as defined in the CAS. *See Mid-Continent Cas. Co., v. L.B. King*, 552 F. Supp. 2d 1309, 1316-17 (N.D. Fla. 2008) (identifying insurer's defense as a "classic coverage defense" when it sought to deny coverage because insured failed to timely report his claim and held that "[w]hen the loss falls within the scope of coverage, but the insurer argues that other factors justify not fulfilling the contract, the insurer is asserting coverage defenses").

***(3) Whether Arch complied with the CAS requirements such that Arch will not be barred from asserting its coverage defense***

Having concluded that Arch did assert a coverage defense, Arch is subject to the requirements of the CAS. If Arch failed to comply with the CAS, it will be barred from asserting its coverage defense. The CAS § 627.426(2) states the following:

> (2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
>
> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and

> (b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before the trial, the insurer:
>
> 1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;
>
> 2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or
>
> 3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

§ 627.426(2), Fla. Stat.

Turnberry contends that Arch violated paragraph 2(a) by failing to provide written notice of Arch's reservation of rights to assert a coverage defense within 30 days after Arch knew of the coverage defense. Both parties agree that the first record notice of the underlying personal injury claim was on May 9, 2006. (Turnberry's Mot. Summ. J. Ex. E.) Thereafter, in a letter dated June 22, 2006, Arch claims it reserved all rights under the policy. The relevant language in that letter states:

> Once we have completed our review, we will provide our coverage analysis. In the interim, we consider all rights under the policy and at law (common, statutory and otherwise), to be mutually reserved. We specifically reserve the right to assert any and all defenses to coverage, including those that may be developed or discovered in the course of our further coverage investigation.

(Turnberry's Mot. Summ. J. Ex. G.)

Irrespective of whether this catch-all reservation of rights language asserts a meaningful coverage defense, Arch still failed to make such reservation within 30 days of May 9, 2006 as

required by paragraph 2(a). *See Mid-Continent Cas.*, 552 F. Supp. 2d at 1316-17 (noting that a coverage defense must be in the reservation of rights letter required under Fla. Stat. § 627.426(2) or it will be barred). On May 9, 2006, Arch knew or should have known of its coverage defense and was, therefore, required to send proper notice to Turnberry within 30 days, but instead sent written notice in a letter dated June 22, 2006.[2] In fact, it was not until January 21, 2009 that Arch finally raised the coverage defense that Turnberry failed to comply with the Subcontractor's Endorsement, and therefore, the SIR would be increased to $1,000,000. (Turnberry's Mot. Summ. J. Ex. H.)

Although the CAS requires compliance with both paragraph 2(a) and 2(b) for the insured to be able to assert a coverage defense, even if the Court assumes that Arch complied with paragraph 2(a) of the CAS, the Court finds that Arch still failed to comply with paragraph 2(b). In neither the June 22, 2006 letter nor the January 21, 2009 letter, did Arch discuss whether it would defend Turnberry. Arch also neglected the other alternatives in paragraph 2(b) because it failed to obtain a nonwaiver agreement from Turnberry or retain mutually agreeable independent counsel. Arch's position that it had no duty to defend Turnberry is without merit. Even though the policy does not create an affirmative duty for Arch to defend Turnberry, it does explicitly allow for Arch to "assume control of the investigation" at any time including the selection and termination of attorneys, and allows Arch to assume control of any settlement. (Arch's Mot. Summ. J. Ex. A.) Thus, Arch was required to comply with paragraph 2(b) of the CAS and failed to do so.

Consequently, the Court concludes that Arch failed to comply with the CAS and is, thus, barred from asserting a coverage defense. *See Country Manors Ass'n v. Master Antenna Sys. Inc.*,

---

[2] The statute also requires the notice letter to be delivered either through registered or certified mail. Because neither party questions the method of delivery of the letter to Turnberry, the Court assumes Arch complied with this statutory requirement.

534 So. 2d 1187, 1194 (Fla. 4th DCA 1989) (holding that even though insurer may have "substantially complied" with section 627.426(2), insurers failure to comply strictly with section 627.426(2) barred insurer from denying coverage based on any coverage defense) (citing *Auto Owners Ins. Co. v. Salvia*, 472 So. 2d 486, 488 (Fla. 5th DCA 1985)); *cf. Pepper's Steel & Alloys, Inc. v. U. S. Fid. & Guar. Co.*, 668 F. Supp. 1541, 1544 (S.D. Fla. 1987) (holding that although insurer did not strictly comply with the statute, insured's concession that it had actual notice within the meaning of the statute was sufficient to comply with the statute). In sum, Arch is precluded from denying coverage based on any "coverage defense." Therefore, the applicable SIR is $50,000.

The Court need not address the underlying merits of Arch's coverage defenses because Arch did not meet the preconditions set forth in the CAS. Accordingly, it is

**ADJUDGED** that Plaintiffs' Motion for Summary Judgment **(D.E. No. 30)** is hereby GRANTED and Defendant's Motion for Summary Judgment **(D.E. No. 31)** is hereby DENIED. Further, all pending motions are DENIED as MOOT with leave to renew if appropriate.

DONE AND ORDERED in Chambers at Miami, Florida, this 2/4 day of March, 2010.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record